**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**(WATERLOO)**

| **IN RE:**<br><br>**RYAN'S ELECTRICAL SERVICES, LLC,**<br><br>Debtor. | Case No. 20-00411<br><br>Chapter 11<br><br>Hon. Thad J. Collins |
|---|---|

# ORDER FOR USE OF CASH COLLATERAL

On March 25, 2020 (the "Petition Date"), the Debtor commenced with this Court a voluntary case under Subchapter V of Chapter 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of Iowa (the "Bankruptcy Court"). The Debtor is continuing to operate its business and manage its property as debtor in possession pursuant to section 1184 of the Bankruptcy Code. Before the Court is the motion of Community State Bank ("Bank") brought under section 364(a) for entry of an order to adequately protect the Bank's interest in certain collateral, including cash, being used by the Debtor to operate the Debtor's business during the pendency of this bankruptcy.

Hearing was held on ________, 2020. The Court finds the motion should be GRANTED.

IT IS HEREBY DECREED:

1. Debtor will provide adequate protection to the Bank for any decrease in the value of its interest in the Debtor's property resulting from the use, sale or lease of the Debtor's property or the payment of any fees and expenses from the Collateral, (as hereinafter defined) pursuant to the Carve Out, (as hereinafter defined) during the pendency of this bankruptcy.

2. The Bank holds, subject to certain liens of the Internal Revenue Service to yet be determined, first and senior validly perfected and enforceable liens on and security interests in, among other things, the Debtor's inventory, equipment, accounts, and general intangibles, and all proceeds thereof (hereinafter the "Collateral"), all as more particularly described and evidenced by those several security agreements (the "Security Agreements") executed by the Debtor on various dates and perfected by the Financing Statement filed on August 15, 2018, and Continuations filed with the Iowa Secretary of State on various dates.

3. The Debtor's obligations to the Bank constitute legal, valid, and binding obligations of the Debtor, enforceable in accordance with the terms of the various loan documents applicable thereto, including, without limitation, the Security Agreements. The Debtor shall have no objection, offset, defense or counterclaim of any kind or nature to such obligations, which, together with any amounts previously paid to the Bank on account thereof, are not, and will not be, subject to avoidance, recovery, reduction, disallowance, disgorgement, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

4. Proceeds from the sale of inventory, collection of accounts and any other sums, cash, or cash equivalents received from any source constitute cash collateral pursuant to Bankruptcy Code section 363(a), which may comprise the Cash Collateral of the Bank. The Bank is entitled to adequate protection of its interests in the pre-petition collateral (including Cash Collateral) and the Debtor may not use the Cash Collateral for any purpose outside of the ordinary course of business without order of the Court, after appropriate notice and hearing, and authorizing such use based on a finding that the Bank's position is adequately protected.

5. The Bank shall have a validly perfected first priority lien on and security interest in the Debtor's post-petition Collateral subject to existing valid, perfected and superior liens in the

Collateral held by other Creditors, if any, and any fees and expenses approved by the court pursuant to the Carve-Out (as defined below). The rights, liens and interests granted to the Bank hereunder shall be based on the Bank's rights, liens and interests in the Debtor's Cash Collateral pre-petition. The post-petition security interests and liens granted hereunder shall be valid, perfected and enforceable and shall be deemed effective and automatically perfected as of the Petition Date without the necessity of the Bank taking any further action. The Bank may, at its option, file continuation statements, financing statements or such documents as it deems necessary to evidence its security interest in the Collateral. Upon request by the Bank, the Debtor will execute and deliver any and all such documents, or financing statements, as are necessary to effect and perfect the Bank's security interest as set forth in this paragraph.

6. In the event of, and only in the case of diminution of value of the Bank's interest in the Collateral, the Bank is granted a super-priority claim that shall have priority in the Debtor's bankruptcy case over all priority claims and unsecured claims against the Debtor and its estate, now existing or hereafter arising, of any kind or nature whatsoever including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 726(b), and 1114 of the Bankruptcy Code or otherwise. This super-priority claim shall be subject and subordinate only to the Carve-Out described below and not to any other unsecured claim (having administrative priority or otherwise). The Carve-Out shall only include any fees or expenses approved by the Bankruptcy Court (the "Carve-Out"). The Carve Out shall not be available (A) to pay any such fees incurred in connection with the investigation, initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation against the Bank, (B) so long as no event of default shall have occurred and be continuing, the Carve Out shall not be reduced by the

payment of fees and expenses allowed by the Court and payable under sections 328, 330 and 331 of the Bankruptcy Code, and (C) nothing in this Final Order shall impair the right of any party to object to any such fees or expenses to be paid by the Debtor's estate. It is the intention of this order to expand upon the rights of the Bank and to "prime" all administrative expenses except for the Carve-Out described herein.

7. As further adequate protection, the Debtor will make post-petition monthly payments to the Bank in an amount equal to the amount to be paid pre-petition, pursuant to the terms of the Debtor's pre-petition loan documents with the Bank, unless the Debtor and the Bank agree to a different or lesser amount.

8. The Debtor shall continue to maintain a bank account designated as a debtor in possession account ("DIP Account") at U.S. Bank, NA., for the deposit of all bankruptcy estate funds and payment of bills incurred during the administration of the case.

9. The Debtor shall be authorized to use Cash Collateral for the payment of its usual, ordinary, customary, regular, and necessary post-petition expenses incurred in the ordinary course of Debtor's business and for payment of those pre-petition claims approved and allowed by Order of the Bankruptcy Court. Any of the following payments shall **not** be considered ordinary and usual expenses necessary to continue the operation of the Debtor's business unless the Bank consents to any such payment in writing prior to such payment being made and provided approval of this Court is obtained : (1) operation of the Debtor's business at any fixed locations other than the pre-petition business premises or locations; (2) payment of trade debt incurred prior to the commencement of this case, unless approved by Order of the Bankruptcy Court; (3) payment of any taxes owed prior to the date the Petition was filed by the Debtor; and (4) payment of any other debt incurred prior to the commencement of this case. The foregoing

payments due are merely illustrative, and not the exclusive list of payments that will not be considered ordinary and usual expenses. Such authorization shall continue for a period extending to and including the Confirmation Date or dismissal or conversion of the case, on an interim and final basis, subject to the following additional terms and conditions:

(a) All proceeds received from the Debtor's operations of its business, the ordinary course of its business, and the collection of accounts receivable and profits, shall be deposited in the DIP Account. Only the ordinary and usual expenses necessary to continue operation of the business, incurred after the commencement of the bankruptcy case, shall be paid from the DIP Account, and other payments as the Court shall allow from time to time. In the event Debtor is included as a payee on customer payments to suppliers, including but not limited to Echo Group, Inc., and Consolidated Distributors, Inc., d/b/a Electrical Engineering & Equipment, Debtor is authorized to endorse such payments without further order of the Court or consent of the Bank, but shall account for such payments in monthly reports to the Court.

(b) On or before thirty (30) days after the entry of this Order, the Debtor shall provide to the Bank an initial aging of all accounts receivable and accounts payable and a list of all inventory, plus total current operating expenses and total current collections. This report shall be updated and provided to the Bank by the 30th day of each month thereafter (the "Reports").

(c) The Bank shall, at any time, be permitted to conduct a full inspection of the accounts of the Debtor by visiting the Debtor's premises to inspect, verify and photocopy all such records and to inspect, appraise and document the Collateral.

Debtor grants the Bank, its agents and employees, a license to enter upon all such premises for such purposes during its regular, customary and ordinary business hours, subject to all security restrictions imposed by various health, environmental and regulatory agencies. The Bank shall also have access, within five (5) business days of any request, to the Debtor and its management, personnel and advisors.

(d) On or before thirty (30) days after the entry of this Order, the Debtor shall prepare and provide the Bank with a balance sheet and income statement existing as of the filing date of Debtor's Petition. Within thirty (30) days of each successive month, Debtor shall provide an updated balance sheet and income statement along with a copy of all monthly reports provided to the Court and/or the Subchapter V Trustee. Any such document filed with the Court shall be deemed provided.

(e) All Collateral shall be insured to its full value, and Debtor shall otherwise comply with the terms and conditions of the Bank. Evidence of insurance listing the Bank as insured mortgagee/loss payee shall be provided within thirty (30) days of the entry of this Order.

(f) If at any time the Debtor fails to properly insure the Collateral, fails to pay any post-petition local, state or federal taxes as they become due, or fails to comply with any other term of this order ("Default") the Bank shall give the Debtor and its attorney written notice that it has fifteen (15) days to cure such default after the mailing or transmission of written notice of such default. If the default is not timely cured, the Bank may seek entry of an order granting them relief from the automatic stay. Upon such termination, the Bank shall be authorized to terminate the use of Cash Collateral and take such action against the Collateral as permitted under its

respective loan documents, including, without limitation, the Security Agreements, and applicable state law.

(g) Any termination of the automatic stay under this order and any Order thereon shall apply to the above Chapter 11 case or any subsequent conversion.

10. All rights of the Bank to seek additional adequate protection for Debtor's use of Cash Collateral, to file for relief from the automatic stay, to seek dismissal or to assert any other right or cause of action, or any other matter with respect to the Debtor, whether in this bankruptcy case, or otherwise, are expressly reserved. The failure or delay by the Bank to seek relief or otherwise exercise its rights and remedies under this order or any loan document shall not constitute a waiver of any of the rights of the Bank

11. Any documents and instruments required of Debtor by this order are, or when executed and delivered, will be valid, binding and enforceable in accordance with their respective terms upon entry of this order. Immediately upon entry of this order the provisions contained herein shall be valid and binding upon and inure to the benefit of the Bank, all other Creditors of the Debtor, and all other parties in interest.

12. Nothing in this order shall prevent the Bank from seeking attorney fees incurred by the Bank, as set out in the loan documents, to the extent authorized under Bankruptcy Code §506, and 1129(a)(4).

13. The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this order.

GOOD CAUSE APPEARING, IT IS SO ORDERED:

Judge, U.S. Bankruptcy Court

____________________________

Proposed order prepared by:

Johannes H. Moorlach
**WHITFIELD & EDDY, P.L.C.**
699 Walnut St., Suite 2000
Des Moines, IA 50309
Telephone: (515) 288-6041
Fax: (515) 246-1474
moorlach@whitfieldlaw.com

ATTORNEYS FOR COMMUNITY
STATE BANK