IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA
(WATERLOO)

| | |
|---|---|
| IN RE:<br><br>RYAN'S ELECTRICAL SERVICES, LLC,<br><br>Debtor. | Case No. 20-00411<br><br>Chapter 11<br><br>Hon. Thad J. Collins |

## STIPULATION AND CONSENT ORDER
## FOR USE OF CASH COLLATERAL

THIS STIPULATION AND CONSENT ORDER is made as of May 11, 2020, by and between Ryan's Electrical Services, LLC, as Debtor in the above referenced Chapter 11 case (the "Chapter 11 Case") by and through Debtor's counsel, Robert C. Gainer, of the Cutler Law Firm, and Community State Bank (the "Bank"), by and through their attorney of record, Thomas H. Burke of the Whitfield & Eddy, P.L.C. law firm.

WHEREAS, on March 25, 2020 (the "Petition Date"), the Debtor commenced with this Court a voluntary case under Subchapter V of Chapter 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of Iowa (the "Bankruptcy Court"). The Debtor is continuing to operate its business and manage its property as debtor in possession pursuant to section 1184 of the Bankruptcy Code.

WHEREAS, under section 364(a), the parties agree to seek a Cash Collateral Order on a limited basis permitting the Debtor to use cash collateral to continue normal business operations, pay interest only on the loans due the Bank, and provide a carve out for professional fees.

THEREFORE, the Debtor and the Bank stipulate and agree as follows:

1. Debtor will provide adequate protection to the Bank for any decrease in the value of its interest in the Debtor's property resulting from the use, sale or lease of the Debtor's property or the payment of any fees and expenses from the Collateral, (as hereinafter defined) pursuant to the Carve Out, (as hereinafter defined) during the pendency of this bankruptcy.

2. The Debtor agrees the Bank holds, subject to certain liens of the Internal Revenue Service,[1] first and senior validly perfected and enforceable liens on and security interests in, among other things, the Debtor's inventory, equipment, accounts, and general intangibles, and all proceeds thereof (hereinafter the "Collateral"), all as more particularly described and evidenced by those several security agreements (the "Security Agreements") executed by the Debtor on various dates and perfected by the Financing Statement filed on August 15, 2018, and Continuations filed with the Iowa Secretary of State on various dates.

3. The Debtor's obligations to the Bank constitute legal, valid, and binding obligations of the Debtor, enforceable in accordance with the terms of the various loan documents applicable thereto, including, without limitation, the Security Agreements. The Debtor has no objection, offset, defense or counterclaim of any kind or nature to such obligations, which, together with any amounts previously paid to the Bank on account thereof, are not, and will not be, subject to avoidance, recovery, reduction, disallowance, disgorgement, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

---

[1] As of the date of this filing, counsel for the Debtor, Bank, and the IRS are conferring in good faith to determine the agreed-upon value of the secured position of the IRS and Bank, respectively, in the Debtor's assets. Notwithstanding the Bank's filed claim, nothing in this Stipulation should be construed to establish a final, liquidated value of the secured interest in the Debtor's assets held by the IRS or the Bank.

4. Proceeds from the sale of inventory, collection of accounts and any other sums, cash, or cash equivalents received from any source constitute cash collateral pursuant to Bankruptcy Code section 363(a), which may comprise the Cash Collateral of the Bank. The Bank is entitled to adequate protection of its interests in the pre-petition collateral (including Cash Collateral) and the Debtor may not use the Cash Collateral for any purpose outside of the ordinary course of business without order of the Court, after appropriate notice and hearing, and authorizing such use based on a finding that the Bank's position is adequately protected. The Debtor wishes to provide adequate protection to the Bank to the extent of its secured interest in property in which the estate has an interest for which the value of Bank's interest in the estate's interest is secured.

5. Debtor grants to the Bank a validly perfected first priority lien on and security interest in the Debtor's post-petition Collateral subject to existing valid, perfected and superior liens in the Collateral held by other Creditors, if any, and any fees and expenses approved by the court pursuant to the Carve-Out (as defined below). This provision is subordinate to any liquidated, allowed secured claim of the Internal Revenue Service. The Carve-Out shall include (i) any fees due to the U.S. Trustee pursuant to 28 U.S.C. § 1930; (ii) any fees due to the Subchapter V Trustee in this case; and (iii) and fees and expenses due to counsel for the Debtor, as approved by the Court (the "Carve-Out").

6. The rights, liens and interests granted to the Bank hereunder shall be based on the Bank's rights, liens and interests in the Debtor's Cash Collateral pre-petition. Upon entry of an Order granting this Stipulation, the post-petition security interests and liens proposed to be granted hereunder shall be valid, perfected and enforceable and shall be deemed effective and automatically perfected as of the Petition Date without the necessity of the Bank taking any further action. The Bank may, however, at its option, file continuation statements, financing

statements or such documents as it deems necessary to evidence its security interest in the Collateral. Upon request by the Bank, the Debtor will execute and deliver any and all such documents, or financing statements, as are necessary to effect and perfect the Bank's security interest as set forth in this paragraph. Nothing herein shall expand the extent or priority of any lien of or security interest of Bank as of the Petition Date.

7. In the event of diminution of value of the Bank's interest in the amount of cash on hand in the Debtor's accounts as of the Petition Date in the amount of $30,408.40 ("Account Cash"), the Bank is granted a super-priority claim, dollar for dollar in the Account Cash, that shall have priority in the Debtor's bankruptcy case over all priority claims and unsecured claims against the Debtor and its estate, now existing or hereafter arising, of any kind or nature whatsoever including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 726(b), and 1114 of the Bankruptcy Code or otherwise. This super-priority claim shall be subject and subordinate only to the Carve-Out defined above and not to any other unsecured claim (having administrative priority or otherwise). It is the intention of the Debtor to expand upon the rights of the Bank and to "prime" all administrative expenses except for the Carve-Out defined above.

8. As further adequate protection, the Debtor will make post-petition monthly payments to the Bank in the amount of $5,560.29 at 5.25 percent interest on the principal amount due under the pre-petition loan documents with the Bank, beginning May 15 and monthly thereafter until confirmation.

9. The Debtor shall continue to maintain a bank account designated as a debtor in possession account ("DIP Account") at U.S. Bank, NA., for the deposit of all bankruptcy estate funds and payment of bills incurred during the administration of the case.

10. The Debtor shall be authorized to use Cash Collateral for the payment of its usual, ordinary, customary, regular, and necessary post-petition expenses incurred in the ordinary course of Debtor's business and for payment of those pre-petition claims approved and allowed by Order of the Bankruptcy Court. Any of the following payments shall **not** be considered ordinary and usual expenses necessary to continue the operation of the Debtor's business unless the Bank consents to any such payment in writing prior to such payment being made and provided approval of this Court is obtained : (1) operation of the Debtor's business at any fixed locations other than the pre-petition business premises or locations; (2) payment of trade debt incurred prior to the commencement of this case, unless approved by Order of the Bankruptcy Court; (3) payment of any taxes owed prior to the date the Petition was filed by the Debtor; and (4) payment of any other debt incurred prior to the commencement of this case. The foregoing payments due are merely illustrative, and not the exclusive list of payments that will not be considered ordinary and usual expenses. Such authorization shall continue for a period extending to and including the Confirmation Date or dismissal or conversion of the case, on an interim and final basis, subject to the following additional terms and conditions:

    (a) All proceeds received from the Debtor's operations of its business—excepting joint checks of suppliers—in the ordinary course of its business (specifically including, and not as a limitation, Echo Group, Inc. and Consolidated Electrical Distributors, Inc. d/b/a Electrical Engineering & Equipment ("3E")), and the collection of accounts receivable and profits, shall be deposited in the DIP

Account. Only the ordinary and usual expenses necessary to continue operation of the business, incurred after the commencement of the bankruptcy case, shall be paid from the DIP Account, and other payments as the Court shall allow from time to time.

(b) On or before thirty (30) days after the entry of this Order, the Debtor shall provide to the Bank an initial aging of all accounts receivable and accounts payable and a list of all inventory, plus total current operating expenses and total current collections. This report shall be updated and provided to the Bank by the 30th day of each month thereafter (the "Reports").

(c) The Bank shall, at any time, be permitted to conduct a full inspection of the accounts of the Debtor by visiting the Debtor's premises to inspect, verify and photocopy all such records and to inspect, appraise and document the Collateral. Debtor grants the Bank, its agents and employees, a license to enter upon all such premises for such purposes during its regular, customary and ordinary business hours, subject to all security restrictions imposed by various health, environmental and regulatory agencies. The Bank shall also have access, within five (5) business days of any request, to the Debtor and its management, personnel and advisors.

(d) On or before thirty (30) days after the entry of this Order, the Debtor shall prepare and provide the Bank with a balance sheet and income statement existing as of the filing date of Debtor's Petition. Within thirty (30) days of each successive month, Debtor shall provide an updated balance sheet and income statement along with a copy of all monthly reports provided to the Court and/or the Subchapter V Trustee. Any such document filed with the Court shall be deemed provided.

(e) All Collateral shall be insured to its full value, and Debtor shall otherwise comply with the terms and conditions of the Bank. Evidence of insurance listing the Bank as insured mortgagee/loss payee shall be provided within thirty (30) days of the entry of this Order.

(f) If at any time the Debtor fails to properly insure the Collateral, fails to pay any post-petition local, state or federal taxes as they become due, or fails to comply with any other term of this Stipulation ("Default"), the Bank shall give the Debtor and its attorney written notice that it has fifteen (15) days to cure such default after the mailing or transmission of written notice of such default. If the default is not timely cured, the Bank may seek entry of an order granting them relief from the automatic stay. Upon such termination, the Bank shall be authorized to terminate the use of Cash Collateral and take such action against the Collateral as permitted under its respective loan documents, including, without limitation, the Security Agreements, and applicable state law.

(g) Any termination of the automatic stay under this Stipulation and any Order thereon shall apply to the above Chapter 11 case or any subsequent conversion.

11. All rights of the Bank to seek additional adequate protection for Debtor's use of Cash Collateral, to file for relief from the automatic stay, to seek dismissal or to assert any other right or cause of action, or any other matter with respect to the Debtor, whether in this bankruptcy case, or otherwise, are expressly reserved. The failure or delay by the Bank to seek relief or otherwise exercise its rights and remedies under this Stipulation or any loan document shall not constitute a waiver of any of the rights of the Bank

12. This Stipulation, and any documents and instruments required of Debtor by this Stipulation are, or when executed and delivered, will be valid, binding and enforceable in accordance with their respective terms upon entry of an Order approving this Stipulation.

13. No representation or warranty of Debtor contained in this Stipulation or in any statement, instrument, or other document furnished by Debtor in connection with this Stipulation, or prior to this Stipulation contains any untrue statement of material fact or omits to state any material fact.

14. Immediately upon entry by the Court of an Order approving this Stipulation, the provisions of the Stipulation shall be valid and binding upon and inure to the benefit of the Bank, all other Creditors of the Debtor, and all other parties in interest.

15. The Bankruptcy Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this Stipulation and Consent Order.

GOOD CAUSE APPEARING, IT IS SO ORDERED:

Dated and Entered: May 12, 2020

_____
THAD J. COLLINS
CHIEF BANKRUPTCY JUDGE

APPROVED AS TO FORM AND CONTENT:

/s/ **Robert C. Gainer**

CUTLER LAW FIRM
1307 50th Street
West Des Moines, IA 50266
(515) 223-6600
Email: rgainer@cutlerfirm.com

Attorney for Debtor and Debtor in Possession

AND

**/s/ Thomas H. Burke**

WHITFIELD & EDDY, PLC
699 Walnut Street, Suite 2000
Des Moines, IA 50309
(515) 288-6041
Email: burke@whitfieldlaw.com

Attorney for Community State Bank

Prepared by Johannes (John) H. Moorlach
Attorney for Community State Bank

                Respectfully submitted,

                **s/ Johannes H. Moorlach**
                      Iowa Bar No. 19215

                **Thomas H. Burke**
                WHITFIELD & EDDY LAW
                699 Walnut Street, Suite 2000
                Des Moines, IA 50309
                Telephone: (515) 288-6041
                Facsimile: (515) 246-1474
                moorlach@whitfieldlaw.com
                burke@whitfieldlaw.com

                ATTORNEYS FOR COMMUNITY
                STATE BANK