# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| In re: | ) | Case No.: 20-00411 |
| | ) | |
| Ryan's Electrical Services, LLC, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) **UNITED STATES TRUSTEE'S** |
| | ) **OBJECTION TO PLAN CONFIRMATION** |

The Acting United States Trustee ("UST"), through the undersigned Trial Attorney, hereby raises the following objections to Debtor's proposed Plan of Reorganization ("Plan"):

1. Pursuant to 28 U.S.C. § 586(a), the UST is charged by Congress with the duty to monitor the administration of cases commenced under the United States Bankruptcy Code, 11 U.S.C. § 101, et seq. ("Code").

2. Debtor filed its Plan on June 23, 2020. (doc. 83). Because Debtor is designated as a small business debtor under Subchapter V of Title 11 of the United States Code, Debtor was not required to file a Disclosure Statement. Rather, the content of Debtor's Plan is governed by 11 U.S.C. § 1190.

3. Pursuant to 11 U.S.C. § 1191(a), the Plan may be confirmed only if all of the requirements of Section 1129(a), other than paragraph (a)(15), are met. For the reasons set forth herein, the UST challenges Debtor's ability to comply with 11 U.S.C. § 1129(a)(11).

**I. Feasibility Under 11 U.S.C. § 1129(a)(11)**

4. The prevailing concern regarding the Plan is whether Debtor will have the financial wherewithal to fund the Plan.

5. For the Court to confirm a Chapter 11 plan, Section 1129(a)(11) requires that "[c]onfirmation is not likely to be followed by the liquidation, or the need for further reorganization[.]" 11 U.S.C. § 1129(a)(11). A debtor has the burden of proving that the Plan

meets the requirements of 11 U.S.C. § 1129(a) by a preponderance of the evidence. *In re Danny Thomas Props. II Ltd. P'ship*, 241 F.3d 959, 962 (8th Cir. 2001).

6. Commonly referred to as the "feasibility" requirement, Section 1129(a)(11) requires the court to determine whether a plan is workable and offers "a reasonable prospect of success" in order to achieve confirmation. *In re Richards*, 2004 WL 764526, at *2-3 (Bankr. N.D. Iowa Apr. 2, 2004). "The test is whether the things which are to be done after confirmation can be done as a practical matter under the facts." *Id.* (citing *In re Clarkson,* 767 F.2d 417, 420 (8th Cir.1985)).

7. This test is meant to prevent confirmation of plans based upon speculation. "To determine whether a plan is feasible, the court should analyze the debtor's projected income and expenses in relation to actual past performance." *In re Am. Trailer & Storage, Inc.,* 419 B.R. 412 (Bankr. W.D. Mo. 2009). The purpose of this section is "to prevent visionary schemes which promise creditors more under a proposed plan than that which the debtor can possibly attain after confirmation." *In re Riverbend Leasing, LLC*, 458 B.R. 520, 530 (Bankr. S.D. Iowa 2001).

     **a. Paycheck Protection Program**

8. As part of the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, certain eligible businesses could apply for a loan and guarantee program through the U.S. Small Business Administration ("SBA") titled the "Paycheck Protection Program" or "PPP". The SBA's eligibility requirements for the PPP loan explicitly exclude applicants "presently involved in any bankruptcy".

9. Post-Petition, as Debtor-In-Possession, Debtor applied for a PPP loan through US Bank.[1] According to Debtor's May 2020 Monthly Operating Report, Debtor received PPP loan proceeds in the amount of $220,802.00 on May 19, 2020. According to Debtor's June 2020 Monthly Operating Report, as of July 16, 2020, the balance of the PPP loan in Debtor's possession was $5,981.24. Thus, between May 19 and July 16, Debtor depleted almost the entirety of the loan.

10. Although Debtor was involved in an active bankruptcy at the time it applied for the loan, the loan application reflects "no" in response to: "Is the Applicant or any owner of the Applicant presently suspended, debarred, proposed for debarment, declared ineligible, voluntarily excluded from participation in this transaction by any Federal department or agency, or presently involved in any bankruptcy." The UST is informed, believes, and thereon alleges that subsequent to the loan disbursement, the SBA has demanded Debtor return the PPP loan proceeds due to ineligibility.

11. The UST is informed, believes, and thereon alleges that Debtor disputes any obligation to refund the loan. In any event, it appears a post-petition SBA claim may exist against Debtor. As discussed below, Debtor has consistently operated at a significant loss post-petition. Even if Debtor were able to sustain Plan payments for a period of time, that ability appears to diminish if Debtor is obligated to repay the PPP loan.

    **b. Operating at a Loss**

12. Debtor's April through June 2020 disbursements exceed receipts. Removing the PPP capital from Debtor's April through June 2020 cash receipts results in a cumulative net income

---

[1] Debtor did not seek approval from the court to obtain the loan pursuant to 11 U.S.C. § 364.

deficit of $173,713.59 and a cash balance as of June 30, 2020 of <$119,658.54>. (Attached UST demonstrative Exhibit).

### c. Balloon Payments

13. Pursuant to 11 U.S.C. §§ 1129(a)(9)(C), 1129(a)(9)(D), and 1191(c)(2)(A), Section 507(a)(8) claims and secured claims shall be paid in full within five years of the effective date of the Plan. A debtor under Subchapter V must commit all projected disposable income during this period to payments under the Plan. Debtor attempts to meet these requirements by including substantial balloon payments at month sixty following the effective date. More specifically, the Plan calls for a balloon payment to satisfy Unsecured Priority Tax Claims, the Secured Tax Claim of the IRS, and the secured claim of Community State Bank.

14. The proposed treatment is indicative of administrative insolvency. Debtor is acknowledging that it does not have the ability to pay the referenced claims "in full" in equal installment payments over a five-year period. Sound cash projections that reflect disposable income in an amount that would allow for payment in full via equal installments provides for a certainty of payment. More troublesome is that Debtor has amortized the payment to the secured claims of the IRS and Community State Bank over a 15-year period. Thus, Debtor is proposing to pay only a fraction of such claims over 60 months, contrary to the "payment in full" directive under the Code.

15. Nothing in the Plan suggests Debtor will have either cash reserves necessary to meet the balloon payments or the ability to seek financing at the time the balloon payments are due. To determine feasibility of a plan in which a balloon payment is proposed, courts look to a number of factors, including: the future earning capacity and disposable income of the debtor, whether the plan provides for payment of interest to secured creditors, the debtor's perseverance

and motivation to execute the plan successfully, the type of employment in which the debtor is engaged or may become engaged, whether the plan includes a cushion for unexpected expenses, the equity in the property, whether the plan provides for recurring charges against the property, and whether the plan provides for payments to the creditor which will significantly reduce the debt and enhance the prospects for refinancing at the end of the plan. *In re Wagner*, 259 B.R. 694, 701 (B.A.P. 8th Cir. 2001).

16. Debtor's 12-month projections flip from past performance negative cash flow to positive cash flow without evidence or explanation. Even accepting those projections, the proposed treatment provides payment of only a portion of the debt, and certainly does not reflect an ability to make the balloon payments through the generation of profits. Nor does the Plan explain Debtor's ability to refinance the remaining debt. Likewise, as noted in the Subchapter V Trustee's Report (doc. 93), an entity in Debtor's position should have a cash reserve of $200,000-$300,000 to access when needed. Such a reserve or line of credit is absent in Debtor's case.

### d. Operational and Accounting Practices

17. Pre-petition operational and accounting deficiencies resulted in the nonpayment of tax obligations and diversion of employee retirement contributions, among other accumulated liabilities. In the "Events Leading to the Bankruptcy Case" at p. 6 of 21, Debtor directs fault at an internal Controller who apparently caused Debtor to incur significant tax and employee benefit liabilities through 2018 and 2019. Seemingly contrary to that assertion, Debtor's principal, Ryan Etten, testified at the meeting of creditors that he was aware of the nonpayment of taxes and benefits and that it was ultimately his decision to evade such payments. During this period, Mr. Etten continued to pay himself an annual salary of $150,000 and utilized business

resources to perform electrical services on his new home (resulting in the loan to shareholder of $143,107). Mr. Etten's contributory management decisions are not addressed in the Plan.

18. The Subchapter V Trustee's Report emphasizes that a need for personnel with bookkeeping, accounting and financial evaluation skills continues. Debtor's monthly reports are often inaccurate or incomplete. For each report, the UST engaged in numerous attempts to seek clarification about items in the report and to request items missing, such as unattached bank statement and reconciliation reports, and the continued inability to reconcile receipts and disbursements. The Plan is lacking in attributing serious concern for this issue vis-à-vis a business plan or cost control procedures. Nor does Debtor demonstrate the intent to make internal changes to its bookkeeping practices. The ability to appropriately project revenue, expenses, and cash needs directly correlates to Plan feasibility.

19. Unfortunately, the issues addressed herein cast serious doubt on the feasibility of the Plan proposed by Debtor. Given the lack of an unsecured creditor committees in Subchapter V cases and attention provided to these issues in the Plan, the UST has a heightened responsibility to raise the concerns identified herein for the benefit of all interested parties.

WHEREFORE, the Acting United States Trustee respectfully requests the Court deny confirmation of Debtor's Plan of Reorganization.

**James L. Snyder**
Acting United States Trustee
Region 12

By: /s/ L. Ashley Zubal
**L. Ashley Zubal**
ID # IS9998256
Federal Building, Room 793
210 Walnut Street
Des Moines, Iowa 50309-2108
Ph: (515) 323-2269 / Fax: 284-4986
Ashley.Zubal@usdoj.gov

## CERTIFICATE OF SERVICE

The undersigned certifies that copies of this document were served on the parties listed below by electronic mail or first-class mail, postage prepaid, on July 24, 2020:

Parties requesting notice pursuant to Bankruptcy Rule 2002
Parties receiving electronic service via CM/ECF

   /s/ Jennifer L. Cline
Jennifer L. Cline
Paralegal Specialist